### Appeal of GUTTERMAN STRAUSS CO.

Docket No. 234. Submitted March 18, 1925. Decided September 7, 1925.

> Upon the facts herein, *held*, that the taxpayer did not file a false and fraudulent return with intent to evade the tax, within the meaning of the law.

*Mark Eisner, Esq.*, and *Ferdinand Tannenbaum, Esq.*, for the taxpayer.

*C. H. Curl, Esq.*, for the Commissioner.

Before Ivins, Korner, and Marquette.

This appeal involves a deficiency in income and profits taxes for the year 1919, in the amount of $47,322.13, and also involves the additional amount of 50 per cent of such deficiency which the Commissioner proposes to assess on account of the filing by the taxpayer of an alleged false and fraudulent return for the year 1919, with intent to evade tax. The appeal was submitted on the pleadings and oral and documentary evidence, from which the Board makes the following

### FINDINGS OF FACT.

The taxpayer is, and has been since some time prior to the year 1918, a corporation duly organized and existing under the laws of the State of Massachusetts, with its principal office and place of business at Boston, and is and has been engaged in the sole-leather business. Aaron L. Strauss is and was during the years 1918, 1919, and 1920 president of the corporation.

In the year 1918 the taxpayer entered into certain informal agreements with the Quartermaster Corps, United States Army, by which agreements it was to furnish to the said Quartermaster Corps, for the use of the United States Army, certain quantities of leather soles and heels for shoes, and it immediately purchased from two tanneries large quantities of leather and started to fill the contracts.

Soon after the signing of the armistice on November 11, 1918, the Government canceled the contracts referred to, but agreed to and did accept all finished and nearly finished goods. The taxpayer thereafter made a claim against the War Department for compensation on account of losses incurred by it on account of the cancellation of its contracts, and the War Department awarded to the taxpayer, under the Dent Act, the amount of $62,339.92, which amount was received in two checks on August 9, 1919. At that time the taxpayer's books, on account of a scarcity of competent bookkeepers, were being kept by a young girl, a recent high-school graduate, who was without practical experience in bookkeeping. She entered the amount of the two checks in the taxpayer's cashbook, general ledger, and accounts-payable ledger, debiting cash and crediting United States Government account. These entries were improperly made, and on account of said improper entries the books did not reflect the true amount of income received by the taxpayer in the year 1919.

The taxpayer's income and profits-tax return for the year 1919 was prepared by Ernst & Ernst, accountants, but the $62,339.92 received by the taxpayer from the United States in that year, on account of the canceled contracts, was not included and reported as income, inasmuch as it appeared on the taxpayer's books as an account payable to the United States. The return was signed by Aaron Strauss, president of the corporation.

On May 24, 1920, the following letter was sent to the taxpayer by the Bureau of Internal Revenue:

IT : I : Am  JF
TREASURY DEPARTMENT,<br>
*Washington, May 24, 1920.*

GUTTERMAN STRAUSS CO.,
   *Boston, Mass.*

SIRS : According to information in this office, you received certain settlements because of canceled war contracts, which, however, do not seem to have been reported by you in conformity with article 52 of regulations 45.

It is requested that you furnish this office with a full list of all such settlements, with the dates thereof, for consideration in connection with the audit of your 1918 tax returns. Settlements with other contractors as well as those made direct with the Government should be included, and the value of any material, etc., received by you in such settlement should be given, as well as the cash consideration received.

If, as the result of such cancellation, you have made settlements with subcontractors, similar information should be furnished.

In your reply you are requested to refer to the initials in the upper lefthand corner of this letter.

Respectfully,

G. V. NEWTON,
*Deputy Commissioner,*
By JAMES FURSE,
*Chief of Section.*

Upon the receipt of the letter above quoted, the taxpayer, through Mr. Strauss, took the matter up with Ernst & Ernst, who, after an examination of the taxpayer's books, wrote the following letter to the Commissioner of Internal Revenue under date of July 13, 1920:

JULY 13, 1920.

Ref. IT: I: Am JF
COMMISSIONER OF INTERNAL REVENUE,
*Washington, D. C.*

DEAR SIR: Your letter of May 24, addressed to Gutterman Strauss Co., Boston, Mass., under the above file number, has been referred to us for attention.

On account of the absence of Mr. Strauss, this letter did not reach us until June 29. Immediately upon its receipt we communicated with you through our Washington office and arranged for time until July 10 to prepare the data necessary for a reply to this letter. It happened, however, that during this extension we had a holiday and the writer was away from his desk for several days and the preparation of this reply was delayed beyond the extended time of July 10. We trust that these facts will be taken into consideration by you in determining the action which should be taken on this case.

As a matter of record, we desire to state that the income-tax report of the above-named company for the year 1919 was prepared by our staff accountants. We were limited in our engagement, however, to the preparation of the return without detailed examination of the books. It now appears that in August, 1919, the company received two checks from the War Department in settlement of a claim which they had made for loss on uncompleted war contracts and materials on hand for same, these checks amounting to $62,339.92. Through a misunderstanding as to the correct nature of the transaction, the bookkeeper credited these checks when received to an account with the United States Government included with expenses as compared to the net sales for the year 1919 to support the claim of 28.769 per cent for selling expenses. As a result of preparing these revised figures for the year 1919, we have prepared an amended return for that year which has been duly signed and sworn to by the officers of the company, and we have also prepared an amended return for the year 1918, in which has been included the additional income of $25,315.02, the balance of the settlement of $62,339.92 after

deducting the loss realized in 1919 from the liquidation of this merchandise as above explained and supported by the attached exhibits.

Upon receipt of additional assessments for the years 1918 and 1919, we will send our check in settlement.

Yours very truly,

ERNST & ERNST,
By A. H. P.

Between July 13 and October 4, 1920, the taxpayer furnished the Commissioner copies of its settlements with the Government of the canceled contracts and several conferences were held by representatives of the taxpayer and the Commissioner, as a result of which the $62,339.92 involved herein was allocated to the taxpayer's income for the years 1918 and 1919 in the amounts of $23,520.17 and $38,819.75, respectively. On October 4, 1920, the taxpayer was notified by letter that its net income for the year 1918 had been increased by the portion of the $62,339.92 allocated thereto, and that additional tax was due for that year in the amount of $20,514.05. The additional tax so determined was paid by the taxpayer upon notice and demand by the collector. On December 31, 1920, the amount of $62,339.92, which had been erroneously handled on the taxpayer's books, was credited directly to surplus.

The taxpayer did not file an amended return for the year 1919, but merely waited for a bill from the collector for whatever additional tax might be determined to be due upon the basis of the allocation to that year of part of the money received on account of the cancellation of the contracts involved.

During the year 1919 the taxpayer disposed of the material it had purchased for the purpose of filling its Government contracts, and which had not been used at the time the contracts were canceled. Part of the unused material was resold at a loss to the tannery from which it had been purchased, and the remainder thereof was cut up and sold along with the taxpayer's regular stock. Upon the sale of this material in the year 1919 the taxpayer sustained a loss of $35,978.80.

Subsequent to the year 1920 the Commissioner determined that the amount received by the taxpayer from the United States in settlement of the canceled contracts was income to the taxpayer for the year 1919. He accordingly increased the taxpayer's income as reported in its return by that amount and determined that there is a deficiency in tax for that year in the amount of $47,322.13. He also determined that the taxpayer's return for the year 1919 was fraudulently made with intent to evade tax, and he proposes to assess 50 per cent of the amount of the deficiency, in addition to the deficiency, under the provisions of section 275 (b) of the Revenue Act of 1924. The taxpayer now concedes that the amount received in settlement.

of the canceled contracts was income for the year 1919. The deficiency letter was mailed to the taxpayer on July 25, 1924. The petition herein was filed September 22, 1924.

## DECISION.

The determination of the Commissioner that the taxpayer filed a false and frudulent return with intent to evade the tax is disapproved. The deficiency should be computed in accordance with the following opinion and the amount thereof will be settled on consent or on 10 days' notice, under Rule 50.

## OPINION.

MARQUETTE: This appeal presents two questions for consideration; first, the action of the Commissioner in refusing to deduct from amounts received under certain Government contracts losses sustained and expenses incurred by the taxpayer in the disposition of materials acquired for use in connection therewith; and, second, the determination of the Commissioner proposing to assess a penalty of 50 per cent of the additional tax for the filing of an alleged false and fraudulent return with intent to evade the tax.

The taxpayer concedes that the amount of $62,339.92 is properly income in the year 1919 from Government contracts. Its contention is that losses sustained and expenses incurred in the disposition of materials purchased to carry out the contracts should be deducted from the income received from its Government contracts before such income is subjected to the tax rates applicable thereto. The evidence shows that part of the materials purchased was resold to its vendors at a loss and the balance cut up and sold along with its regular stock. The taxpayer incurred manufacturers' and selling expenses in connection with the disposition thereof which, together with the losses sustained in the disposition thereof, amounted to the sum of $35,978.80. We find no reason for disallowing this amount as a deduction from income received from the Government contracts and it should be allowed as a loss in computing the tax thereon.

The point next to be considered is whether upon the evidence presented we should hold the taxpayer filed a false and fraudulent return with intent to evade the tax and is liable to a penalty of 50 per cent of the additional tax. Most of the evidence presented was directed to this issue, and we have the testimony of the bookkeeper, the accountant who prepared the original return and who subsequently submitted the data upon which the present deficiency was predicated, and the president of the corporation before us, together with documentary evidence showing the history of the case. We have carefully considered this evidence and have come to the con-

clusion that it contains nothing in the way of facts which would warrant us in holding that the return of the taxpayer was fraudulently false and made with intent to evade the tax. We shall shortly set forth the reasons for our conclusion.

At the time the checks were received by the taxpayer on its Government contracts it had in its employ a young and inexperienced girl just out of high-school, where she had gained some knowledge of bookkeeping. Without instructions so to do she charged cash and credited the United States, believing such entry correctly reflected the transaction. Upon cross examination she stated her reason as follows:

Well, that is the ordinary entry. I received cash and I credited the United States Government.

We have no doubt, after hearing her testimony, that she made the entry in good faith and had no idea or knowledge of its effect upon the tax liability of the corporation.

The accountants who prepared the return did so under their engagement without a detailed examination of the books, and the item contained in the erroneous entry was not disclosed in the return. When the matter was brought to the attention of the taxpayer through a letter from the Internal Revenue Bureau, the accountants were called in and a full disclosure of the transaction was made by letter of July 13, 1920, together with an explanation showing what the books disclosed, as a result of which the Commissioner allocated the amount received between the years 1918 and 1919 and assessed an additional tax for the year 1918, which was paid, and the taxpayer at that time notified the Commissioner that the additional tax for 1919 would be paid upon receipt of the additional assessment.

Much was made of the fact by the attorney for the Commissioner that on December 31, 1920, the amount of $62,339.92 was credited to surplus as evidencing knowledge of the erroneous entry. We do not think this fact is even remotely connected with the issue, for the reason that on July 13, 1920, full disclosure of the transaction had been made to the Government, and the action taken was the only proper action in the circumstances and is a far cry from evidence of fraud. We recognize the fact that the law requires every corporation to file a return setting forth its gross income and the deductions and credits allowed by law which must be sworn to by its principal officers, and that the corporation or its officers can not hide behind the fraudulent acts of employees committed in its behalf. We are unable, however, to find any evidence of fraud on the part of either the officers or employees, and the proposed penalty of 50 per cent of the additional tax should therefore not be assessed.

ARUNDELL not participating.