*437 OPINION.
Marquette:
This appeal presents two questions for consideration; first, the action of the Commissioner in refusing to deduct from amounts received under certain Government contracts losses sustained and expenses incurred by the taxpayer in the disposition of materials acquired for use in connection therewith; and, second, the determination of the Commissioner proposing to assess a penalty of 50 per cent of the additional tax for the filing of an alleged false and fraudulent return with intent to evade the tax.
The taxpayer concedes that the amount of $62,339.92 is properly income in the year 1919 from Government contracts. Its contention is that losses sustained and expenses incurred in the disposition of materials purchased to carry out the contracts should be deducted from the income received from its Government contracts before such income is subjected to the tax rates applicable thereto. The evidence shows that part of the materials purchased was resold to its vendors at a loss and the balance cut up and sold along with its regular stock. The taxpayer incurred manufacturers’ and selling expenses in connection with the disposition thereof which, together with the losses sustained in the disposition thereof, amounted to the sum of $35,978.80. We find no reason for disallowing this amount as a deduction from income received from the Government contracts and it should be allowed as a loss in computing the tax thereon.
The point next to be considered is whether upon the evidence presented we should hold the taxpayer filed a false and fraudulent return with intent to evade the tax and is liable to a penalty of 50 per cent of the additional tax. Most of the evidence presented was directed to this issue, and we have the testimony of the bookkeeper, the accountant who prepared the original return and who subsequently submitted the data upon which the present deficiency was predicated, and the president of the corporation before us, together with documentary evidence showing the history of the case. We have carefully considered this evidence and have come to the con- *438 elusion that it contains nothing in the way of facts which would warrant us in holding that tire return of the taxpayer was fraudulently false and made with intent to evade the tax. We shall shortly set forth the reasons for our conclusion.
At the time the checks were received by the taxpayer on its Government contracts it had in its employ a young and inexperienced girl just out of high-school, where she had gained some knowledge of bookkeeping. Without instructions so to do she charged cash and credited the United States, believing such entry correctly reflected the transaction. Upon cross examination she stated her reason as follows:
Well, that is the ordinary entry. I received cash and I credited the United States Government.
We have no doubt, after hearing her testimony, that she made the entry in good faith and had no idea or knowledge of its effect upon the tax liability of the corporation.
The accountants who prepared the return did. so under their engagement without a detailed examination of the books, and the item contained in the erroneous entry was not disclosed in the return. When the matter was brought to the attention of the taxpayer through a letter from the Internal Kevenue Bureau, the accountants were called in and a full disclosure of the transaction was made by letter of July 13, 1920, together with an explanation showing what the books disclosed, as a result of which the Commissioner allocated the amount received between the years 1918 and 1919 and assessed an additional tax for the year 1918, which was paid, and the taxpayer at that time notified the Commissioner that the additional tax for 1919 would be paid upon receipt of the additional assessment.
Much was made of the fact by the attorney for the Commissioner that on December 31,1920, the amount of $62,339.92 was credited to surplus as evidencing knowledge of the erroneous entry. We do not think this fact is even remotely connected with the issue, for the reason that on July 13, 1920, full disclosure of the transaction had been made to the Government, and the action taken was the only proper action in the circumstances and is a far cry from evidence of fraud. We recognize the fact that the law requires every corporation to file a return setting forth its gross income and the deductions and credits allowed by law which must be sworn to by its principal officers, and that the corporation or its officers can not hide behind the fraudulent acts of employees committed in its behalf. We are unable, however, to find any evidence of fraud on the part of either the officers or employees, and the proposed penalty of 50 per cent of the additional tax should therefore not be assessed.
AeuNdell not participating.